UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

_____

| | | |
|---|---|---|
| AURELLIO BONILLA, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | No. 5:14-cv-05212 |
| | : | |
| CITY OF ALLENTOWN; CITY OF | : | |
| ALLENTOWN POLICE PENSION FUND | : | |
| ASSOCIATION; ED PAWLOSKI; | : | |
| JUILO GURIDY; RAY O'CONNELL; | : | |
| JOE DAVIS; JEANETTE EICHENWALD; | : | |
| DARYL L. HENDRICKS; CYNTHIA MOTA; | : | |
| PETER SCHWEYER; GARRET STRATHEAM; | : | |
| MARY ELLEN KOVAL; LOUIS COLLINS; | : | |
| IBOLYA BALOG; JAMES GRESS; | : | |
| RYAN KOONS; JEFF GLAZIER; | : | |
| MICHAEL WILLIAMS; and | : | |
| EDUARDO EICHENWALD, | : | |
| Defendants. | : | |

_____

**A M E N D E D   O P I N I O N**
**City Defendants' Motion to Dismiss, ECF No. 5 – Granted in Part**
**Pension Board Defendants' Motion to Dismiss, ECF No. 6 – Granted in Part**
**Pension Board Defendants' Supplemental Motion to Dismiss, ECF No. 28 – Granted**
**City Defendants' Motion for Summary Judgment, ECF No. 50 – Granted in Part**
**Bonilla's Motion for Partial Summary Judgment, ECF No. 51 – Denied**
**City Defendants' Motions in Limine, ECF Nos. 53-54 – Dismissed as Moot**

**Joseph F. Leeson, Jr.**                                                    **February 13, 2019**
**United States District Judge**

## I.    INTRODUCTION

Plaintiff Aurelio Bonilla, a former police officer with the City of Allentown, settled an

employment-discrimination lawsuit against the City in 2013.  Whether Bonilla would receive a

disability pension was discussed during the settlement negotiations.  Since that time, the City of

Allentown Police's Pension Fund Association ("Pension Board" or "Board") denied Bonilla's

application for a disability pension.  Bonilla thereafter initiated the above-captioned action for

damages, equitable relief, and declaratory relief. After the instant action was filed, however, the

state court reversed and remanded the pension denial to the Board, where proceedings are

ongoing. At issue here are the City Defendants'[1] Motion to Dismiss, ECF No. 5; the Pension

Board Defendants'[2] Motions to Dismiss, ECF Nos. 6 and 28; the City Defendants' Motion for

Summary Judgment, ECF No. 50; Bonilla's Motion for Partial Summary Judgment, ECF No. 51;

and the City Defendants Motions in Limine, ECF Nos. 53-54. For the reasons set forth below,

summary judgment is entered in favor of the City as to Bonilla's breach of contract claim, and all

other claims are dismissed.

## II.    FACTUAL AND PROCEDURAL HISTORY[3]

Bonilla was hired by the City of Allentown as a police officer in July 2008. City SUD ¶

1, ECF No. 50-7.[4] On November 20, 2012, Bonilla filed a Complaint in this Court alleging that

---

[1]      The "City Defendants" include the City of Allentown, Ed Pawlowski, Julio Guridy, Ray
O'Connell, Joe Davis, Jeanette Eichenwald, Daryl Hendricks, Cynthia Mota, and Peter
Schweyer.
[2]      The "Pension Board Defendants" include the City of Allentown Police's Pension Fund
Association, Garret Stratheam, Mary Ellen Koval, Louis Collins, Iboyla Balog, James Gress,
Ryan Koons, Jeff Glazier, Michael Williams, and Eduardo Eichenwald.
[3]      To the extent that the procedural history of the case may be relevant to disposition of the
motions, the relevant history is included herein.
[4]      Where only one party's statement of material facts ("SUF") is cited, all parties have
admitted the fact. *Compare* City's SUF, ECF No. 50-7, *with* Pl.'s Resp. City's SUF, ECF No.
62-1, *with* Pl.'s SUF, ECF No. 63, *with* Board's Resp. Pl.'s SUF, ECF No. 74, *with* City's Resp.
Pl.'s SUF, ECF No. 75-3. As to some of these facts, Bonilla claims to deny the fact; however,
these denials are not so much a genuine dispute as to the asserted fact as needless and frivolous
quibbling over the statement and superfluous legal argument. *See* Fed. R. Civ. P. 56(e)(2)
(providing that if a party "fails to properly address another party's assertion of fact as required by
Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion"). For
example, the City's sixth statement of material fact states in total: "At the settlement conference,
the parties achieved a global resolution of Bonilla's claims. N.T. Plaintiff, Exhibit 2, 2:16–22."
City's SUF ¶ 6. Bonilla's response to this statement begins: "Denied as stated, but admitted only
that The City of Allentown defendants and Mr. Bonilla (the parties) came to an understanding for
terms to achieve a global settlement." Pl.'s Resp. City's SUF ¶ 6. Although "denied," clearly
Bonilla admits the City's statement. However, Bonilla then goes on to argue about
consideration, performance, and breach in his response to the City's statement, which is

the City subjected him to race and disability discrimination.  *Id.* ¶ 2; *Bonilla v. City of Allentown*, No. 5:12-cv-06528 (E.D. Pa. filed Nov. 20, 2012).  On April 17, 2013, the Honorable Henry S. Perkin held a settlement conference in that action.  City SUD ¶ 4.  By the conclusion of the conference, the parties had reached a global resolution to dispose of Bonilla's discrimination claims and his worker's compensation claims.  *Id.* ¶ 6.  The parties placed some of the terms of the settlement agreement on the record.  *See id.* ¶ 7; Pl.'s Resp. City's SUF ¶ 7.  Counsel for the City stated, *inter alia*, that "the City of Allentown agrees to pay [Bonilla] 5,000 dollars and agrees not to oppose any application or subsequent review for service-connected disability pension."  City SUD ¶ 8; Pl. dep. at Ex. 2, Settlement Conf. Tr. 3:8-11, ECF No. 50-3.  Counsel for the City further stated that Bonilla agreed to execute a written settlement agreement.  Pl. dep. at Ex. 2, 3:19-22.  When Judge Perkin asked Bonilla, who was given an opportunity to consult with counsel (Donald Russo, Esquire), if he heard, understood, and agreed with the terms of the settlement, Bonilla responded, "I do."  *Id.* at 4:14-5:22.  Under the terms stated for the record, the City of Allentown did not guarantee Bonilla that he would receive a pension.  *See* Pl. dep. at Ex. 2; City SUD ¶ 12; Pl.'s SUD ¶ 13.

Before a written settlement agreement was executed, Bonilla applied to the Pension Board for a disability pension.  *See* Pl. dep. at Ex. 5, ECF No. 50-4; Pl.'s SUD ¶ 21.  Bonilla attached to the application, which is dated June 26, 2013, reports from his treating orthopedic surgeon and from his primary care physician, each opining that Bonilla is permanently disabled.

---

nonresponsive to the asserted statement and improper.  *See id.*; Fed. R. Civ. P. 56(c)(2).  Additionally, Bonilla denies a number of facts based solely on his incorrect allegation that the exhibit cited by the City does not exist.  *See, e.g.,* Pl.'s Resp. City's SUF ¶¶ 9, 25, 40-42, 46.  Contrary to Bonilla's assertions, the cited exhibits are part of the record.  *See, e.g.,* Ex. A, Part 3, ECF No. 50-3 (containing exhibit 2 (transcript of the settlement conference proceedings on April 17, 2013) from Bonilla's deposition testimony).  Therefore, a denial on this basis is insufficient.  *See* Fed. R. Civ. P. 56(c) and 56(e)(2).

*See* Pl. dep. at Ex. 5.  The letter from Bonilla's primary care physician states merely: "Mr. Aurelio Bonilla has had treatment for left knee injury.  Due to ongoing patellofemoral chondromalacia, he is permanently disabled for performing duties as a police officer." *Id.*

In early August 2013, before the Board ruled on the pension application, Bonilla and the City signed a written Settlement Agreement regarding the employment-discrimination lawsuit. *See* Pl. dep. at Ex. 3, Settlement Agreement, ECF Nos. 50-3 and 50-4.  As part of the Agreement, Bonilla resigned his employment with the City of Allentown and agreed to the dismissal of the employment-discrimination lawsuit. *Id.* at §§ 1, 4.  In exchange, the City agreed to pay Bonilla $5,000. *See id.* at § 2(a).  Further, under the terms of the written Agreement, the City agreed "that should Mr. Bonilla apply for a service-connected disability pension, its [sic] will not oppose any such application or subsequent review." *See id.* at § 2(b).  The Agreement specifies that "[t]he foregoing does not guarantee Mr. Bonilla's ability to obtain any such service-connected disability pension as any such determination is made by an independent agency." *Id.* The Settlement Agreement further states that the written "Agreement represents the complete and entire understanding of the parties," "the parties acknowledge that they understand the terms of this Agreement, that such terms are acceptable, that there are no additional obligations, either oral or written, to be performed by any party. . . ." *Id.* at § 14(B). *See also id.* at § 10 ("Knowing and Voluntary Agreement").

On August 28, 2013, after the written Settlement Agreement was executed, the Pension Board held a meeting to review Bonilla's disability pension request. *See* Pl. dep. at Ex. 6, ECF No. 50-4.  The Board discussed the language in a governing ordinance that requires the Board to have the opinion of two physicians, whom were "selected by" the Board, that the pension

applicant is totally disabled.  *See* Pl. dep. at Exs. 6-7, ECF No. 50-4; Ex. C at § 143.22(A),[5] ECF

No. 50-5.  Neither of the physicians whose reports were attached to Bonilla's application was

selected by the Board.  *See* Pl. dep. at Exs. 6-7.  Thus, the Board determined that before it could

decide the pension application, Bonilla must have a physical examination by two physicians

chosen by the Board from the approved city list.  *See id.*  The Board notified Bonilla of this

decision on October 7, 2013, and advised him to contact an orthopedic physician from St. Luke's

Medical and from OAA Orthopedic Specialists, and to have each provide the Board with a

written report opining that Bonilla is "totally disabled."  *See* Pl. dep. at Ex. 7.

On October 24, 2013, Bonilla advised the Board that none of the Board's listed providers

would agree to see him, and asked the Board to add Bonilla's treating physicians to the approved

provider list or to identify additional acceptable providers.  *See* Pl. dep. at Ex. 8, ECF No. 50-4.

This request was discussed at the quarterly meeting on November 19, 2013, when the Board,

noting that the reports attached to Bonilla's application were insufficient,[6] voted to investigate

and to select two new orthopedic physicians to examine Bonilla.  *See* Pl. dep. at Ex. 9, ECF No.

50-4.  The names of the two Board-selected physicians were provided to Bonilla on January 13,

---

[5]      The pension ordinance states:
        The Police Pension Fund Association shall have the right, on application received,
        to retire on pension any officer or employee accepting the provisions of this
        Ordinance, if in its opinion and in the opinion of two (2) reputable physicians who
        have been selected by the Association, who shall make a physical examination
        and file their opinions in writing with the Association . . . that such officer is
        totally disabled, through injury received or disease contracted in the actual
        performance of duty and by reason of the performance of such duty without fault
        or misconduct on their part. . . .
Ex. C at § 143.22(A).

[6]      Counsel for Bonilla, Anthony Caputo, Esquire, acknowledged at this meeting that the
letter from Bonilla's general practitioner was "sparse.  *See* Pl. dep. at Ex. 9.

2014.  *See* Pl. dep. at Ex. 10, ECF No. 50-4.  On January 22, 2014, the Board's counsel contacted

Bonilla's counsel to determine the status of the examinations.  City SUD ¶ 34.

On or about February 12, 2014, Bonilla filed a charge of retaliation against the City and

the Pension Board with the U.S. Equal Employment Opportunity Commission ("EEOC").  City

SUD ¶ 36; Ex. E, ECF No. 50-5.

The Pension Board held a meeting on March 13, 2014, and discussed Bonilla's pension

application.  *See* Pl. dep. at Ex. 4, ECF No. 50-4.  John Marchetto, Esquire, addressed the Board

on behalf of the City's Solicitor's Office, stating:

> I would like to give the Board a little bit of background on the city's
> administration's position on this proceeding.
> On April 17, 2013, the city and Mr. Bonilla appeared before a federal
> magistrate judge with his lawyers, and we entered into a stipulation of settlement
> agreement whereby the city agreed that it would not oppose any pension request
> by Mr. Bonilla before this board, or would not participate in any such proceeding
> in opposition, which essentially is the way the city views this is that we are
> remaining neutral. We are not opposing this or bringing in any evidence into this
> proceeding that would be in opposition to Mr. Bonilla's pension request and
> likewise, if there was any type of appeal from any proceeding here, that the city
> would not participate in that as well. And that is in line with the colloquy that was
> done before the federal magistrate, Judge Perkin, and in accordance with the
> settlement agreement that was signed by the city and Mr. Bonilla, by Mr. Bonilla
> on August 1st, 2013, and the city, by me, on August 7, 2013.

*See id* at N.T. 5:24-6:20.  The Board also heard from Bonilla, who had yet to undergo two

independent medical examinations, and from his counsel.  *See id.* at 7:18-8:2.  Bonilla's counsel

again asked the Board to accept one or both of the two previously submitted reports.  *See id.* at

8:7-11.  Bonilla informed the Board that the City had agreed as part of the settlement

negotiations that he could use the doctors who had previously submitted reports, that he was "not

going to go to any more doctors," and that he could not afford to pay for two independent

medical examinations.  *See id.* at 8:14 – 9:1.  The Board explained to Bonilla that the pension

ordinance requires two reports from Board-selected doctors and, after hearing concerns from

Bonilla about the associated costs, discussed the possibility of paying for the exams. *See id.* at 11:11-13, 16:17-22, 17:18-18:10. Although the Board, expressing concern about the amount of medical information it had on Bonilla's injuries, *see id.* at 19:7 – 20:3, decided it would not accept the previously submitted reports, it did agree to pay for the independent examinations, *see id.* at 30:9-31:5.

Bonilla failed to obtain the two examinations by the time of the Board's next meeting on April 7, 2014. *See* Pl. dep. at Ex. 11, ECF No. 50-4. Neither Bonilla nor his counsel appeared at the hearing. *See id.* The Board acknowledged that notice of the hearing was sent late, but because one of the Board members spoke with Bonilla's counsel and confirmed that he and Bonilla knew about the hearing but would not be present, without any indication of a conflict or a continuance request, the hearing proceeded. *See id.* at 7:20-8:15. After considering the information before it, the Board voted to deny the pension. *See id.* The Board issued a written decision the following month explaining that because Bonilla refused to be examined by Board-selected physicians and presented no testimony concerning the circumstances under which he was injured, the Board had no alternative but to deny Bonilla's pension application. *See* Ex. F, ECF No. 50-5 (citing § 143.22(A)[7]). Bonilla filed a timely appeal to the Lehigh County Court of Common Pleas. *See* Ex. G, ECF No. 50-5.

While the appeal was pending in the state court, Bonilla filed, on September 11, 2014, the above-captioned action alleging federal and state claims arising from the pension denial. *See* ECF No. 1. Bonilla asserts retaliation claims under Title VII and the Pennsylvania Human Relations Act ("PHRA"); a retaliation claim under the First Amendment; due process and conspiracy claims pursuant to 42 U.S.C. §§ 1983 and 1985; and state tort and constitutional

---

[7]     *See* footnote 5, *supra*.

claims.  *See* Compl., ECF No. 1.  For relief, Bonilla seeks, *inter alia*, a damages award and a

declaration that "the Pension Fund Association is a part of, instrument for, and under the control

and authority of the City, which requires the Association to comply with settlement agreements

that the City of Allentown brokers or guarantees."  *Id.* at 36.

The City Defendants filed a Motion to Dismiss asserting that the Court should abstain

from exercising jurisdiction over the Complaint.  *See* City's Mot. Dismiss 14-21, ECF No. 5

(citing Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, ("DJA"); *Brillhart v. Excess Ins.

Co.*, 316 U.S. 491, 495 (1942);[8] *Reifer v. Westport Ins. Corp.*, 751 F.3d 129, 147 (3d Cir. 2014)).

The City Defendants further assert that if the Court exercises jurisdiction, it should dismiss all

claims as insufficient.  *See id.* at 21-27.  The Pension Board Defendants also filed a Motion to

Dismiss, arguing that all claims should be dismissed for failure to state a claim.  *See* Board's

Mot. Dismiss, ECF No. 6.

Before the motions were decided, the Lehigh County Court of Common Pleas, on

December 4, 2014, reversed and remanded the denial of Bonilla's application for a disability

pension to the Pension Board for further proceedings.  Ex. 1, ECF No. 25; Ex. H, ECF No. 50-5.

The court determined that Bonilla did not have a full and fair opportunity to present evidence at

the hearing because the Board failed to timely advise Bonilla of the scheduling of the hearing

and, also, failed to advise him that the Board was going to take additional evidence.  *Id.*  The

---

[8]      In *Brillhart*, the district court, noting that the merits of the state case had been pending for
six years, dismissed the federal declaratory action "apparently because of a reluctance to prolong
the litigation."  *See Brillhart*, 316 U.S. at 493-94 and n.1.  The Court of Appeals reversed and
directed the district court to make a decision on the merits.  The Supreme Court reversed and
remanded to the district court with instructions for the district court to first determine whether it
may properly exercise its discretion in passing upon the motion to dismiss.  *See id.* at 497-98.
The Court explained that while the district court had jurisdiction under the DJA, "it was under no
compulsion to exercise that jurisdiction" and before deciding whether to dismiss the complaint, it
needed to decide the appropriateness of assuming jurisdiction.  *See id.*

court remanded with directions to the Pension Board to give ample notice "of two appropriate physicians it selects for [Bonilla] to submit for medical examinations," to conduct a hearing on the pension application with at least thirty days advance notice, to allow Bonilla to present any evidence supporting his claim that he suffered a work-related injury, and to create a record with evidence presented by all parties about whether the City's participation in the prior employment-discrimination lawsuit compels the Pension Board to approve Bonilla's pension request. *See id.*

The Pension Board Defendants, with leave of Court, thereafter filed a Supplemental Motion to Dismiss all claims, alleging that the counts are not ripe[9] for adjudication because there has been no final order denying a pension. *See* Board's Supp. Mot. Dismiss, ECF No. 28; Board's Brief Supp. Mot. Dismiss, ECF No. 29. They contend that Bonilla's claims are predicated on the Board's decision to deny Bonilla's application for a pension and that the claims are not yet cognizable because a final order has not been issued regarding the pension. *See* Board's Brief Supp. Mot. Dismiss 1-8.

On January 7, 2015, the above-captioned action was stayed pending the outcome of the pension proceedings. *See* ECF No. 33. The Court explained that most of Bonilla's federal claims require the denial of the pension in order to state a claim and are not ripe for adjudication. *See id.* Although it appeared that the Title VII claim, alleging that Defendants have retaliated against Bonilla for filing a prior Title VII action against the City by unnecessarily delaying the processing of his pension application, may be ripe, the Court reasoned that it could better assess whether the claims were ripe after the state pension proceedings concluded. *See id.*

---

[9]    Bonilla's suggestion that Defendants did not argue ripeness as a basis to dismiss, *see* Pl.'s Opp. 2, is clearly without merit. *See* Board's Supp. Mot. Dismiss 7 (arguing: "the claims asserted by Bonilla in this action are not ripe for judicial review and must be dismissed").

More than three and a half years later, during a telephone conference with the parties on October 2, 2018, the Court[10] learned that the pension proceedings were still not complete. Based on counsel's representations, it appeared to the Court that Bonilla had made little effort since May 2016 to advance the proceedings before the Pension Board.[11] Accordingly, the Court lifted the stay and set deadlines to complete discovery and to file dispositive motions. *See* ECF Nos. 42-43, 64. The Court also granted the parties an opportunity to file any supplement briefs addressing the motions to dismiss. *See* ECF No. 42.

The City Defendants filed a supplemental brief elaborating on its earlier arguments and asserting that the claims are still premature. *See* City's Supp. Mem., ECF No. 44. Bonilla, who had not previously responded to the Pension Board Defendants' two motions to dismiss,[12] filed one response, arguing that the motions to dismiss are moot and that Bonilla's claims are ripe. *See* Pl.'s Opp., ECF No. 45.

---

[10]     The instant action was reassigned from the Honorable Lawrence F. Stengel to the Undersigned on September 14, 2018. ECF No. 37. Immediately thereafter, the Court ordered the parties to file a status report, and then scheduled a telephone conference. *See* ECF Nos. 38-40.

[11]     *See also* Pl.'s SJ Mot., Ex. 7 (letter dated January 21, 2015, from the Pension Board to Bonilla's counsel regarding the scheduled hearing on Bonilla's disability pension application on February 24, 2015, and offering to discuss matters in advance); Pl.'s SJ Mot., Ex. 5 (letter dated July 10, 2015, from the Pension Board to Bonilla's counsel referencing the March 23, 2015 hearing, and stating that the Board was waiting on documents from Bonilla before scheduling the next hearing); Pl.'s SJ Mot., Ex. 6 (letter dated September 4, 2015, from the Pension Board to Bonilla's counsel referencing the Board's attempts to contact Bonilla's counsel to obtain the necessary documents to proceed, counsel's failure to respond, and the scheduling of a hearing for November 9, 2015); Pl.'s SJ Mot., Ex. 8 (letter dated May 9, 2016, from the Pension Board to Bonilla's counsel regarding Bonilla's proposed Stipulation of Facts, some of which are agreed to and many of the others seeking information before stipulation can be made); ECF No. 78-1 (granting Bonilla's request to continue the scheduled board hearing from January 18, 2019, to March or April 2019).

[12]     Although the description on the docket indicates that Bonilla filed a response in opposition to the Pension Board Defendants' first Motion to Dismiss, *see* docket description of ECF Nos. 14-15, the attached documents contain Bonilla's opposition to the City Defendants' Motion to Dismiss at ECF No. 5. Bonilla's only response to either of the Pension Board Defendants' motions was filed on October 9, 2018. *See* Pl.'s Opp., ECF No. 45.

More recently, Bonilla filed a Motion for Partial Summary Judgment, seeking summary judgment on his procedural due process and breach of contract claims. *See* Pl.'s SJ Mot. ECF No. 51. The City Defendants have also filed a Motion for Summary Judgment, asserting that summary judgment should be granted in their favor as to all claims against them. *See* City Defs.' SJ Mot., ECF No. 50.

## III.    STANDARDS OF REVIEW

### A.    Motion to Dismiss

In rendering a decision on a motion to dismiss, this Court must "accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)) (internal quotation marks omitted). Only if "the '[f]actual allegations . . . raise a right to relief above the speculative level'" has the plaintiff stated a plausible claim. *Id.* at 234 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 540, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* (explaining that determining "whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense"). The defendant bears the burden of demonstrating that a plaintiff has failed to state a claim upon which relief can be granted. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

**B.     Motion for Summary Judgment**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  *But see Taylor Inv., Ltd. v. Upper Darby Twp.*, 983 F.2d 1285, 1290 (3d Cir. 1993) (holding that "unripe claims should ordinarily be disposed of on a motion to dismiss, not summary judgment").  A disputed fact is "material" if proof of its existence or nonexistence might affect the outcome of the case under applicable substantive law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  *Id.* at 257.

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once such a showing has been made, the non-moving party must go beyond the pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue.  Fed. R. Civ. P. 56(c); *Celotex*, 477 U.S. at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (stating that the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts").  The party opposing the motion must produce evidence to show the existence of every element essential to its case, which it bears the burden of proving at trial, because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  *Celotex*, 477 U.S. at 323.  The court must consider the evidence in the light most favorable to the non-moving party.  *Scott v. Harris*, 550 U.S. 372, 378 (2007).

## IV.    ANALYSIS

### A.    This Court exercises jurisdiction over the Complaint.

In the City Defendants' Motion to Dismiss, they assert that the Court should abstain from exercising jurisdiction over the Complaint as all claims are tied to the request for declaratory relief.  *See* City's Mot. Dismiss 14-17.  The stay order did not comment on whether it was appropriate to exercise discretionary jurisdiction.  Thus, before discussing any of the pending motions, the Court clarifies that it is exercising discretionary jurisdiction.

"Abstention from the exercise of federal jurisdiction is the exception, not the rule."  *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976).[13]

> When a complaint contains claims for both legal and declaratory relief, a district court must determine whether the legal claims are independent of the declaratory claims.  If the legal claims are independent, the court has a 'virtually unflagging obligation' to hear those claims, subject of course to *Colorado River*'s exceptional circumstances. *Colo. River*, 424 U.S. at 817-19. If the legal claims are dependent on the declaratory claims, however, the court retains discretion to decline jurisdiction of the entire action, consistent with our decision in *Reifer*, 751 F.3d at 144-46.[14]

---

[13]    *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976) (holding that "[a]bdication of the obligation to decide cases can be justified under this doctrine [of abstention] only in the exceptional circumstances where the order to the parties to repair to the State court would clearly serve an important countervailing interest").  There are three general categories of circumstances appropriate for abstention: (1) "cases presenting a federal constitutional issue which might be mooted or presented in a different posture by a state court determination of pertinent state law;" (2) cases presenting "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar;" and (3) cases "where, absent bad faith, harassment, or a patently invalid state statute, federal jurisdiction has been invoked for the purpose of restraining state criminal proceedings, state nuisance proceedings antecedent to a criminal prosecution . . . or collection of state taxes." *Colo. River Water Conservation Dist.*, 424 U.S. at 814-17.  Additionally, "in situations involving the contemporaneous exercise of concurrent jurisdictions," the courts should consider "[wise] judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation," the desire to avoid duplicative litigation," and principles of comity between federal and state courts.  *See id.* at 817-18.

[14]    *Reifer v. Westport Ins. Corp.*, 751 F.3d 129, 134 (3d Cir. 2014) (holding that federal courts have substantial discretion to decide whether to exercise jurisdiction under the DJA, and

*Rarick v. Federated Serv. Ins. Co.*, 852 F.3d 223, 229 (3d Cir. 2017) (holding that the

independent claim test is the most appropriate one for determining whether to exercise

jurisdiction of a case involving claims for both legal and declaratory relief). "The independent

claim test asks whether the coercive [legal] claims (1) are alone sufficient to invoke federal

subject-matter jurisdiction, and (2) can be adjudicated without the requested declaratory relief."

*Sumner v. Tompkins Ins. Agencies, Inc.*, No. 16-2218, 2016 U.S. Dist. LEXIS 78379, at *23

(E.D. Pa. June 15, 2016) (internal quotations omitted). Where the legal claims are dependent on

the outcome of the declarations sought, the court has the discretion to stay or dismiss the claims.

*See id.*

The success of Bonilla's legal claims is largely dependent on whether he receives the

declaration sought. Although certain legal theories within certain counts may not necessarily be

dependent on the outcome of such declaration, other theories within the same counts are

dependent. For example, whether the City Defendants failed to stop deprivation/supervise the

city solicitor from allegedly making guarantees and false representations, *see* Pl.'s Resp. City

Defs.' SJ Mot. 14, is not necessarily dependent on whether the Court declares that the Pension

Board is under the control and authority of the City. However, whether the City Defendants

failed to supervise the Pension Board is dependent on the declaration. Bonilla wants to pursue

both theories for holding the City Defendants liable under Count III. Accordingly, Count III is

dependent on whether Bonilla receives the declaration sought. On the other hand, Bonilla does

not rely on the DJA for jurisdiction; rather, this Court has federal question jurisdiction and/or

supplemental jurisdiction over all counts but Count XII. *See Colo. River Water Conservation*

---

that this discretion is bounded and reviewable (citing *Wilton v. Seven Falls Co.*, 515 U.S. 277
(1995), and *Brillhart*, 316 U.S. 491)).

*Dist.*, 424 U.S. at 815 n.21 (holding that "the presence of a federal basis for jurisdiction may raise the level of justification needed for abstention"). Notably too, although the pension proceedings may resolve many of the claims raised herein, the Pension Board is not a trial court and cannot award compensatory or punitive damages, where applicable, to compensate Bonilla for any constitutional or tort harms he may have suffered. *See also Ewart v. State Farm Mut. Auto. Ins. Co.*, 257 F. Supp. 3d 722, 724-25 (E.D. Pa. 2017) (holding that the "absence of parallel state proceedings creates a rebuttable presumption in favor of exercising jurisdiction"). Most significantly for the Court, however, is that since September 2018, the parties have completed discovery, filed dispositive motions, and submitted pretrial documents. The Court therefore exercises its discretion under the DJA over the Complaint.

**B.      Bonilla's request to strike and stay the City Defendants' Motion for Summary Judgment is denied.**

In response to the City Defendants' Motion for Summary Judgment, *see* Pl.'s Resp. City Defs.' SJ Mot., ECF No. 62, Bonilla asserts that summary judgment should not be granted because he did not have reasonable time to conduct discovery, *see* Fed. R. Civ. P. 56(d) (providing that if the non-moving party "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may" deny the motion). Bonilla submits that the thirty-day discovery period allowed was not reasonable, noting that although the case was initiated in 2014, it was stayed until October 2018. He suggests that memories fade over time, and refers to the number of claims and defendants. Bonilla asks that the Court stay the Motion for Summary Judgment. Bonilla further complains that the absence of an answer by the City Defendants prevents him from knowing which pleadings are disputed. He contends that in the absence of an answer, Federal Rule of Civil Procedure 8(b)(6) deems all allegations in the Complaint admitted. Bonilla also submits that because no answer has been

filed, the City Defendants have not raised any defenses, but rely on defenses as the basis for summary judgment. Bonilla argues that the Motion for Summary Judgment is properly stricken under Rule 12(f). *See* Fed. R. Civ. P. 12(f) (allowing the court to "strike from a pleading an insufficient defense").

Generally, the Court finds Bonilla's arguments unpersuasive. Bonilla has not shown "by affidavit or declaration" specified reasons why he cannot present facts essential to justify his opposition. *See* Fed. R. Civ. P. 56(d). Although the Court initially granted only thirty days to conduct discovery, it honored the parties' request for an extension of time, and allowed approximately sixty days total for discovery. *See* ECF Nos. 43, 52. The dispositive motions deadline was also briefly extended, and the parties were granted leave to file supplemental responses to the motions. *See* ECF No. 64. As Bonilla recognizes, allegations in a complaint are only deemed admitted under Rule 8(b)(6) if "a responsive pleading is required" and because the City Defendants' Motion to Dismiss is still pending, the time to file a responsive pleading has not begun. *Compare* Fed. R. Civ. P. 8(b)(6); Fed. R. Civ. P. 12(a)(4). Moreover, this case was initiated in 2014. Although motions to dismiss were pending and the case was subsequently stayed, nothing prevented the parties from engaging in discovery. *See* Fed. R. Civ. P. 26. The basis of the stay was to allow Bonilla to complete the pension proceedings, which relate directly to the claims in the instant action. Thus, the pension proceedings and discovery therein, if any, are relevant to the instant action, thereby limiting the amount of discovery that would need to be conducted in the above-captioned action. However, Bonilla has made little, if any, effort since May 2016 to advance the proceedings before the Pension Board. *See* Footnote 11, *supra*. It was this Court's action that revived the case. Bonilla's requests to strike or stay are therefore denied. Nevertheless, because many of the claims are premature, those claims will be disposed of on the

motions to dismiss, not summary judgment.[15]  *See Taylor Inv., Ltd.*, 983 F.2d at 1290 (holding

that "unripe claims should ordinarily be disposed of on a motion to dismiss, not summary

judgment").

      **C.    Bonilla's request for partial summary judgment is denied.**

      Bonilla's Motion for Partial Summary Judgment, seeking judgment on the procedural due

process and breach of contract claims, is denied.  Bonilla first moves for summary judgment on

his procedural due process claim, arguing that the City and the Pension Board deprived him of

property (a pension) without proper notice and an opportunity to be heard.  Bonilla relies on the

state court's finding that he was not given a full and fair opportunity to be heard at his pension

hearing.  However, he ignores that part of the court's decision reversing the denial of his pension

application and remanding for a new hearing.  Importantly, because the state may cure a

procedural deprivation by providing a later procedural remedy, a procedural due process

violation is not complete "unless and until the State fails to provide due process."  *See*

*Marchionni v. SEPTA*, No. 98-6491, 2000 U.S. Dist. LEXIS 7808, at *7 (E.D. Pa. June 7, 2000)

(holding that a procedural due process violation is not complete "unless and until the State fails

to provide due process" because the state may cure a procedural deprivation by providing a later

procedural remedy (quoting *Zinermon v. Burch*, 494 U.S. 113, 126 (1990))).  Summary judgment

is therefore denied.

      Next, Bonilla requests summary judgment on his breach of contract claim.  The City

Defendants have also moved for summary judgment on this claim.  This claim, which is the

second count designated as Count IX in the Complaint, *see* Compl. ¶¶ 152-160, is asserted

---

[15]      Only the breach of contract claim against the City, which is the subject of Bonilla's
summary judgment motion as well as the motion of the City Defendants, is disposed of on
summary judgment.

against the Pension Board and the City.  However, the Settlement Agreement (contract) was

entered into between Bonilla and the City only.  The Pension Board was not a party to the

Settlement Agreement.  Accordingly, Bonilla's breach of contract claim fails as a matter of law

against the Pension Board.  *See Price v. Foremost Indus.*, No. 17-00145, 2018 U.S. Dist. LEXIS

70957, at *6 (E.D. Pa. Apr. 26, 2018) ("As a general proposition, a party to a contract may not

recover for breach of contract from an entity who is not a party to the contract.").  The breach of

contract claim is dismissed with prejudice as to the Pension Board.  Additionally, summary

judgment is entered in favor of the City on this count.

"Under Pennsylvania law, a plaintiff must demonstrate the existence of each of the

following elements to establish a breach of contract claim: (1) the existence of a contract; (2)

breach of a duty imposed by the contract; and (3) damages caused by the breach." *Ruple

Builders, Inc. v. Brackenridge Constr. Co.*, No. 2:17-cv-00004, 2019 U.S. Dist. LEXIS 1316, at

*11-12 (W.D. Pa. Jan. 4, 2019) (internal quotations omitted).  "Pennsylvania courts apply the

'plain meaning rule' of interpretation of contracts which assumes that the intent of the parties to

an instrument is embodied in the writing itself, and when the words are clear and unambiguous[16]

the intent is to be discovered only from the express language of the agreement." *Hullett v.

Towers, Perrin, Forster & Crosby*, 38 F.3d 107, 111 (3d Cir. 1994) (internal quotations omitted).

Despite Bonilla's assertions to the contrary, the City did not guarantee Bonilla would

receive a pension.  Rather, the written Settlement Agreement plainly states that the City "**does

not guarantee** Mr. Bonilla's ability to obtain any such service-connected disability pension. . . .

" *See* Settlement Agreement § 2(b) (emphasis added).  The City only agreed that it "will not

---

[16]     "A contract provision is ambiguous if it is susceptible of two reasonable alternative
interpretations.  Where the written terms of the contract are not ambiguous and can only be read
one way, the court will interpret the contract as a matter of law." *Hullett*, 38 F.3d at 111
(internal citation omitted).

oppose any such application or subsequent review." These promises are clear and unambiguous.

Bonilla acknowledged in the Agreement that he had been given a chance to review the terms,

had been encouraged by the City to fully discuss the same with counsel, and voluntarily accepted

the terms. *See* Settlement Agreement § 10 ("Knowing and Voluntary Agreement"). The written

Settlement Agreement states that the Agreement "represents the complete and entire

understanding of the parties," and that "the parties acknowledge that they understand the terms

of this Agreement, that such terms are acceptable, that there are no additional obligations, either

oral or written, to be performed by any party. . . ." *Id.* at § 14(B). The Settlement Agreement is

therefore fully integrated,[17] and the parol evidence rule bars the admission of any previous oral

or written negotiations or agreements involving the same subject matter.[18]

The undisputed evidence shows that the City not take any action before the Pension

Board to oppose Bonilla's application. Rather, counsel for the City advised the Pension Board at

a meeting on March 13, 2014, that the City was not opposing Bonilla's pension request, but was

---

[17]     *See Genesis Bio-Pharmaceuticals, Inc. v. Chiron Corp.*, 27 F. App'x 94, 99 (3d Cir. 2002) (concluding that the settlement agreement was fully integrated because it included a provision stating: "this Agreement contains the entire agreement of the parties with respect to the subject matter hereof, an[d] all prior understanding, discussions and representations are hereby merged within").

[18]     "Once a writing is determined to be the parties' entire contract, the parol evidence rule applies and evidence of any previous oral or written negotiations or agreements involving the same subject matter as the contract is almost always inadmissible to explain or vary the terms of the contract." *Yocca v. Pittsburgh Steelers Sports, Inc.*, 854 A.2d 425, 436-37 (Pa. 2004). "One exception to this general rule is that parol evidence may be introduced to vary a writing meant to be the parties' entire contract where a party avers that a term was omitted from the contract because of fraud, accident, or mistake," and a second exception is "where a term in the parties' contract is ambiguous." *See id.* Neither exception applies here. *See SodexoMAGIC, LLC v. Drexel Univ.*, 333 F. Supp. 3d 426, 446 (E.D. Pa. 2018) ("The Pennsylvania Supreme Court has consistently held that, where a contract is fully integrated and unambiguous, parol evidence may not be admitted to support a claim for fraudulent inducement regarding that contract."). Moreover, "the inducement exception requires a heightened standard of proof" and where the only evidence offered as to the existence of an oral contract is a party's own testimony, as here, that party fails to meet the standard of proof. *See Lukens v. AMTRAK*, No. 99-4102, 2000 U.S. Dist. LEXIS 8697, at *3-4 (E.D. Pa. May 30, 2000).

instead "remaining neutral." *See* Pl. dep. at Ex. 4, N.T. 5:24-6:20. Although Bonilla suggests in his brief that the City opposed his appeal from the Pension Board's decision, there are no facts that would support such a statement because merely being named, by Bonilla, as the appellee does not show that the City opposed the review of the pension application. Similarly, the City Defendants' motions in the above-captioned action do not establish breach. Bonilla initiated the instant action against the City Defendants seeking, *inter alia*, monetary damages for alleged statutory, constitutional, and tort violations. Bonilla therefore forced the City to defend itself. The Settlement Agreement, while imposing a duty not to "oppose [a pension] application" or subsequent review, does not impose a duty on the City to simply sit by and allow itself to be sued on a dozen different claims. In the Complaint, Bonilla seeks judgment against all defendants "for no less than 2.5 million dollars, of which 1 million is for punitive damages, and . . . the full value of the pension, plus compensatory economic and punitive damages, reasonable attorney fees and litigation costs, and such relief allowed at law and in equity to make the Plaintiff whole." *See* Compl. 33. Bonilla's suggestion that the City's opposition to having an award of 2.5 million dollars entered against it constitutes a breach of the Settlement Agreement is wholly without merit.

Additionally, the Settlement Agreement provides that "any such determination [on Bonilla's pension application] is made by an independent agency." *See* Settlement Agreement § 2(b) (emphasis added). This statement further clarifies the parties' understanding that the City did not guarantee Bonilla a pension. Also, because Bonilla had already filed his application for a disability pension with the Pension Board at the time the Settlement Agreement was executed, *see* Pl. dep. at Ex. 5, the parties clearly knew that the "independent agency" referenced in the Settlement Agreement was the Pension Board. This language therefore shows that the parties

contemplated independent review by the Pension Board. Pursuant to this review, the Pension

Board determined that it had no choice but to deny Bonilla's application because he did not have

"the opinion of two (2) reputable physicians who have been selected by the Association" that

Bonilla is totally disabled, as required by § 143.22(A). There is no evidence that the City

amended this or any rule governing pension applications since the execution of the Settlement

Agreement. Therefore, regardless of the connection between the City and the Pension Board, the

City did not take any action to oppose the pension. Summary judgment is entered in favor of the

City as to this claim.

### D. Many of Bonilla's claims are not ripe for adjudication.

Despite the passage of time since this case was initiated, the majority of Bonilla's claims

are still not ripe. "The function of the ripeness doctrine is to determine whether a party has

brought an action prematurely, and counsels abstention until such time as a dispute is sufficiently

concrete to satisfy the constitutional and prudential requirements of the doctrine." *Peachlum v.

City of York*, 333 F.3d 429, 433 (3d Cir. 2003) (internal citations omitted). Most of Bonilla's

claims are dependent on the denial of his pension application, but because those proceedings are

not complete, a decision on the merits is premature.

Bonilla's arguments to the contrary are unpersuasive. Bonilla contends that because the

state court concluded its appellate process, but he has still not obtained a pension, all claims are

ripe. *See* Pl.'s Opp. 2-3. This is incorrect. The state court addressing Bonilla's appeal from the

Pension Board reversed and remanded the denial of Bonilla's application for a disability pension

to the Pension Board for further proceedings. Those proceedings are ongoing. Thus, a decision

on Bonilla's pension application is still pending and judicial review of any claims dependent on

the denial of his pension application is premature. *See Felmeister v. Office of Attorney Ethics,*

*Div. of N.J. Admin. Office of Courts*, 856 F.2d 529, 535 (3d Cir. 1988) (holding that "judicial review is premature when an agency has yet to complete its work by arriving at a definite decision"); *Amanto v. Witlin*, 544 F. Supp. 140, 142 (E.D. Pa. 1982) (holding that the police officer's due process property deprivation claims arising from the denial of his application for disability benefits were premature because his application was still under review).

Bonilla also submits that post-stay delay "renders the defendants' motions to dismiss moot and all of the plaintiff's claims ripe because the delay post stay shows any pension hearing process is a meaningless act." *See* Pl.'s Opp. at 4-9 (citing *Bhatnagar by Bhatnagar v. Surrendra Overseas*, 52 F.3d 1220 (3d Cir. 1995)). However, the case he relies on for support, *Bhatnagar by Bhatnagar*, did not address the question of ripeness. Rather, the circuit court considered whether it was proper to dismiss the complaint under the doctrine of *forum non conveniens*. *See Bhatnagar by Bhatnagar*, 52 F.3d at 1228 (finding that under the "narrow and unusual . . . facts and circumstances of this case," the estimated litigation delay in the foreign forum of fifteen to twenty years, plus an additional three to six years of appeals, rendered the alternative forum inadequate). In analyzing this issue, the court discussed the circumstances under which exhaustion may be excused. *See id.* ("[I]t is well established in administrative law that excessive delay may, in some circumstances, excuse exhaustion requirements."). Under the facts of the instant action, however, "the issue of exhaustion does not have to be addressed because the question here is one of ripeness, not exhaustion." *See Amanto v. Witlin*, 544 F. Supp. 140, 142 (E.D. Pa. 1982) (holding that until there is a final decision from the pension board, the police officer's due process challenges are not ripe for adjudication). Moreover, the record does not reveal such inexcusable or "excessive" delays, so as to moot the Pension Board Defendants' motion to dismiss. *See Bhatnagar by Bhatnagar*, 52 F.3d at 1228 ("[I]t is well

established in administrative law that excessive delay may, in some circumstances, excuse exhaustion requirements.").

In sum, Bonilla's claims that are dependent on the denial of his pension application are not ripe for adjudication. This includes the majority of the claims against the Pension Board Defendants, as well as the procedural due process claim against the City Defendants and aspects of Count III (Failure to Stop Deprivation). To the extent that any claim, or portion thereof, may be ripe, the Court has reviewed the allegations in the Complaint and the documents attached thereto. For the reasons set forth below, these claims are also dismissed.[19]

### E. Title VII claims: Counts I and V are dismissed without prejudice.

Count I, alleging retaliation under Title VII, is asserted against the City and the Board only.[20] Count V, alleging retaliation/discrimination under the PHRA, is asserted against all Defendants.

To state a prima facie case of retaliation under Title VII or the PHRA, "a plaintiff must show that: (1) he or she engaged in a protected employee activity; (2) the employer took an adverse employment action after or contemporaneous with the protected activity; and (3) a

---

[19] Bonilla's argument that when the Court issued the stay order it essentially determined that his claims had merit, thereby mooting the motions to dismiss, is without merit. *See* Pl.'s Opp. at 2-3. Bonilla suggests that the Court's reasoning in the stay order that "[m]ost of the plaintiff's federal claims require the denial of the pension" is equivalent to finding plausible claims. *See id.* at 2 (citing Stay Order dated January 7, 2015, n.1, ECF No. 33). However, Bonilla ignores the remainder of the Court's sentence, which states in total: "[m]ost of the plaintiff's federal claims require the denial of the pension *in order to state a claim*." *See* Stay Order, n.1 (emphasis added). The Court clearly did not conclude that Bonilla had already stated a claim. Moreover, the Court only referred to Defendants' request for dismissal on the basis of ripeness, without mentioning Defendants' arguments that Bonilla failed to state a claim. *See id.* ("The defendants have moved for dismissal of the entire action based on ripeness."). Bonilla's contention that the Court previously ruled on the merits of his claims is therefore contradicted by the plain language of the stay order.

[20] *See Emerson v. Thiel Coll.*, 296 F.3d 184, 190 (3d Cir. 2002) (holding that "individual employees are not liable under Title VII").

causal link exists between the protected activity and the adverse action." *Weston v. Pennsylvania*, 251 F.3d 420, 430 (3d Cir. 2001).

Count I alleges adverse action ranging from conduct related to the formation of the Settlement Agreement and "guarantee of a pension," to procedural due process violations, to delay, and beyond. These alleged adverse actions occurred on numerous dates, over a significant period of time, and Bonilla has failed to allege facts linking the actions to protected activity. *See Lauren W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007) (holding that a plaintiff may establish the requisite causal link by proving "either (1) an *unusually suggestive temporal proximity* between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism *coupled with timing* to establish a causal link" (emphasis added)).

Count V, on the other hand, relies exclusively on the denial of Bonilla's pension application as the adverse action and is therefore premature. Moreover, although § 955(e) of the PHRA contemplates individual liability if the employee aids and abets the unlawful practices, Bonilla has not offered any facts that would show that the individual Defendants aided and abetted the City or the Pension Board in retaliatory or discriminatory actions. *See Dici v. Pennsylvania*, 91 F.3d 542, 552-53 (3d Cir. 1996) (finding that the plaintiff failed to present facts to indicate that the individual defendant aided or abetted the plaintiff's employer). Bonilla has also failed to allege facts to support a discrimination claim under the PHRA.

Counts I and V are dismissed without prejudice.

F.    **Free speech claims: Counts II and VI, and the first Count IX[21] are generally dismissed without prejudice.**

According to the Complaint, Counts II and VI, and the first Count IX (Compl. ¶¶ 137-142) are asserted against all Defendants and allege violations of Bonilla's rights to free speech and to petition under the First Amendment and the Pennsylvania Constitution.[22]

"To make out a First Amendment retaliation claim under 42 U.S.C. § 1983 [as Bonilla asserts in Count II], a plaintiff must establish: (1) he engaged in First Amendment protected activity, (2) the defendant took adverse action sufficient to deter a person of ordinary firmness from exercising his First Amendment rights, and (3) the adverse action was prompted by the plaintiff's protected activity." *Rossiter*, 674 F. App'x at 196 (citing *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003)).  "The threshold inquiry is whether the speech in question is protected by the First Amendment, i.e., whether it relates to 'a matter of public concern.'"  *Rowan*, 474 F. App'x at 877 (quoting *Connick v. Myers*, 461 U.S. 138, 146 (1983)).  However, while the "public concern" analysis applies to the free speech clause, it does not apply to the petition clause.  *See Brennan v. Norton*, 350 F.3d 399, 417 (3d Cir. 2003).  Under Pennsylvania law, "[t]o prove a claim of retaliation, a plaintiff must establish: (1) the plaintiff was engaged in a constitutionally protected activity; (2) the defendant's action caused the plaintiff to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that activity; and (3) the adverse action was motivated at least in part as a response to the exercise of

---

[21]    There are two counts in the Complaint labeled "Count IX."  This section addresses the first Count IX, asserting a violation of Pennsylvania Constitution, Article I, Sections 11 and 20 (rights to petition).  *See* Compl. ¶¶ 137-142.

[22]    Bonilla states in opposition to the City Defendants' Motion for Summary Judgment that the free speech claim is against the Pension Board Defendants only.  *See* Pl.'s Resp. City Defs.' SJ Mot. 13.  However, because the Court is reviewing these claims under the motion to dismiss standard, it considers only the allegations in the Complaint, which names all Defendants.

the plaintiff's constitutional rights." *League of Women Voters v. Commonwealth*, 178 A.3d 737, 783 (Pa. 2018) (internal citations omitted).

Bonilla's alleged protected activity was speaking out at a Board meeting in April 2014, and filing an EEOC complaint and a federal lawsuit against the City. The alleged adverse actions include the denial of his pension, due process violations, and breach. To the extent the alleged adverse action is the denial of Bonilla's pension application, the claims are premature. All three counts also fail to state a claim.

As to the free speech aspects of these counts, the claims fail as a matter of law because Bonilla's speech on April 7, 2014, did not involve a matter of public concern. *See Rowan v. City of Bayonne*, 474 F. App'x 875 (3d Cir. 2012) (concluding that the plaintiff's complaints against the city were not protected speech because he complained about isolated acts by the city, which were directed solely at him, and therefore not a matter of "public concern"); *Miles v. City of Phila.*, No. 11-4040, 2011 U.S. Dist. LEXIS 107499, at *11-12 (E.D. Pa. Sep. 21, 2011) (dismissing the plaintiff's First Amendment retaliation claims because even if the plaintiff spoke out about discrimination by government officials, her speech was made to advance only her own interests and did not implicate the defendants in a pattern of conduct directed at anyone other than her). Bonilla's relentless continuation of his speech and petitioning also makes the Court question whether Defendants took *any* activity sufficiently adverse to deter a person of ordinary firmness from exercising his rights. Moreover, as with the Title VII and PHRA claims, Bonilla failed to sufficiently allege that Defendants' conduct was prompted or motivated by his protected activity.

Counts II and VI, and the first Count IX are dismissed. Except for the requests for monetary damages under the Pennsylvania Constitution, *see Kornegey v. City of Phila.*, 299 F.

Supp. 3d 675, 685 (E.D. Pa. 2018) (dismissing claims for monetary damages for alleged violations under the Pennsylvania Constitution because "federal courts have adhered to the reasoning of the Commonwealth Court in refusing to recognize such claims for money damages" (citing *Jones v. City of Phila.*, 890 A.2d 1188, 1208 (Pa. Commw. Ct. 2006)), the claims are dismissed without prejudice.

**G.    Count III is dismissed without prejudice.**

Count III ("Fail to Stop Deprivation") is purportedly a Fourteenth Amendment claim against all Defendants.  The Complaint alleges that the City Defendants failed to stop the Pension Board Defendants from denying Bonilla's constitutional and contract rights, and could have taken legislative action to stop the Board's delays and denial of his application.  *See* Compl. ¶¶ 107-108.

This count fails to state any discernable claim for relief, as the Fourteenth Amendment does not protect contract rights, nor does it impose an affirmative duty on a municipality to take legislative action to protect one's contract rights.  Count III is therefore dismissed.

If the Court limits its consideration to the allegations in the Complaint, it would dismiss the claim with prejudice because there are no conceivable amendments that could save the woeful deficiencies therein.  However, in deciding whether an amendment is futile, the Court can consider the parties' briefs.  Fortunately for Bonilla, in his opposition to the City Defendants' Motion for Summary Judgment, he clarifies that Count III is a supervisor liability claim under *Monell*.[23]  *See* Pl.'s Resp. City Defs.' SJ Mot. 13-15.  He contends that the City Defendants failed to adequately supervise the city solicitor from making oral promises that were not included in the subsequent written agreement he drafted, and suggests that the City Defendants failed to

---

[23]    *Monell v. Dept. of Social Svcs. of New York City*, 436 U.S. 658 (1978).

supervise the Pension Board Defendants and stop their deprivation of his free speech and due process rights. Although the Court offers no opinion at this time as to whether such allegations would be sufficient to state a claim, Bonilla is granted leave to amend Count III in this respect.

### H. Count IV is dismissed without prejudice.

Count IV, while not as deficient as Count III, is similarly mislabeled. The title of the count references 42 U.S.C. §§ 1983 and 1985, the Fourteenth Amendment, equal protection, due process, and conspiracy to deprive rights. The allegations therein allege violations of Bonilla's procedural due process rights by the Pension Board. *See* Compl. ¶¶ 110-114. There are no conspiracy allegations, which a claim under 42 U.S.C. § 1985 requires, nor any facts pertaining to equal protection. To the extent that this count asserts a procedural due process claim, it is dismissed as premature. To the extent that it attempts to allege anything else, it fails to state a claim. *See, e.g. Thompson v. City of Chester*, No. 14-1510, 2015 U.S. Dist. LEXIS 18572, at *12 (E.D. Pa. Feb. 17, 2015) (dismissing the plaintiff's § 1985 claims against a municipality because there was no co-conspirator) (citing *Sarteschi v. Commonwealth*, No. 1:06-CV-02332, 2007 U.S. Dist. LEXIS 102492, at *11 (M.D. Pa. Apr. 5, 2007) (holding that "a § 1985(3) claim can be based on a conspiracy among officers of a single entity but can not [sic] be based on a conspiracy among the entity and its officers unless the officers acted in a personal capacity or unless independent third parties are alleged to have joined the conspiracy"))); *Moles v. Griffy*, No. 00-2147, 2001 U.S. Dist. LEXIS 15867, at *14 (E.D. Pa. Sep. 18, 2001) ("Plaintiff's inability to sustain his First Amendment retaliation claim under § 1983 against the defendants individually necessarily causes his § 1985 conspiracy claim, grounded in the same underlying action by the defendants, to fail."). Count IV is dismissed.

## I.     Count VII is dismissed without prejudice.

Count VII is a procedural due process claim against the Pension Board Defendants and is

not ripe.  *See Marchionni*, 2000 U.S. Dist. LEXIS 7808, at *7.  *See also Kornegey*, 299 F. Supp.

3d at 685 (dismissing claims for monetary damages for alleged violations under the Pennsylvania

Constitution).

## J.     Count VIII is dismissed with prejudice.

Count VIII, which appears after the first Count IX, *see* Compl. ¶¶ 106-109, seeks

equitable enforcement of a contract against all Defendants.  However, Bonilla alleges throughout

the Complaint that there is a written Settlement Agreement on the pension issue and even

attached a copy of the written agreement to the Complaint.  Accordingly, the unjust enrichment

claim is dismissed with prejudice.  *See Curley v. Allstate Ins. Co.*, 289 F. Supp. 2d 614, 619

(E.D. Pa. 2003) ("Pennsylvania law has long recognized that the doctrine of unjust enrichment is

unavailable where, as here, the relationship between parties is founded on a written agreement or

express contract." (internal quotations omitted)); *Titelman v. Rite Aid Corp.*, No. 00-2865, 2001

U.S. Dist. LEXIS 24049, at *19-20 (E.D. Pa. Nov. 9, 2001) ("The Supreme Court of

Pennsylvania has concluded that 'the quasi-contractual doctrine of unjust enrichment is

inapplicable when the relationship between the parties is founded on a written agreement or

express contract'" (quoting *Schott v. Westinghouse Elec. Corp.*, 259 A.2d 443, 448 (Pa. 1969))).

## K.     The second Count IX is dismissed with prejudice as to the Pension Board, and summary judgment is entered in favor of the City.

For the reasons set forth in Section C above, the Pension Board is dismissed with

prejudice and summary judgment is entered in favor of the City as to the second count

designated as Count IX, *see* Compl. ¶¶ 152-160, alleging breach of contract.

**L.      Count X is dismissed with prejudice.**

Count X, alleging fraud, is asserted against the City only.  The Complaint alleges that the City's attorneys in the employment-discrimination lawsuit intentionally made deceptive and deceitful representations to Bonilla that he would receive a pension, in an attempt to induce him to rely on the representations and dismiss the lawsuit.  *See* Compl. ¶¶ 161-168.

The City is immune from tort claims under Pennsylvania's Political Subdivision Tort Claims Act ("PSTCA"), 42 Pa. C.S. §§ 8541-8564.  Further, none of the eight exceptions allowing for liability based on negligent acts apply here.  *See Holmes v. City of Phila.*, No. 05-2909, 2005 U.S. Dist. LEXIS 16116, at *8 (E.D. Pa. Aug. 4, 2005) (dismissing all state law torts against the city based on the PSTCA).  Count X is therefore dismissed with prejudice.  *See ACMAT Corp. v. Sch. Dist.*, No. 85-7067, 1988 U.S. Dist. LEXIS 14612, at *3 (E.D. Pa. Dec. 21, 1988) (concluding that the negligence claims were barred as a matter of law pursuant to the PSTCA and that "[a]ny basis for recovery on the plaintiff's contracts must be based on contract law, not tort law").

**M.      Count XI is dismissed with prejudice.**

Count XI, alleging tortious interference with contract claim, against the Pension Board Defendants fails to state a claim because the allegations are insufficient to show that the Pension Defendants caused a breach, *see Glazer v. Chandler*, 414 Pa. 304, 307, 200 A.2d 416, 418 (1964) (explaining that the tort of inducing breach of contract requires that the defendant induce or otherwise cause the third party to breach), or that they acted with the purpose of causing harm, *see St. Germain v. Wisniewski*, No. 15-1279, 2016 U.S. Dist. LEXIS 103084, at *22 (W.D. Pa. Aug. 5, 2016) (dismissing the tortious interference with contract claim because the allegations were insufficient to show that the defendants specifically intended to cause harm to the plaintiff).

Further, the claim is dismissed with prejudice because, for the reasons previously discussed, the City did not breach the Settlement Agreement.

### N.  Count XII is dismissed without prejudice.

Because there are no claims remaining against any Defendant, Count XII, seeking declaratory relief, is dismissed without prejudice.

## V.  CONCLUSION

In its discretion and considering the parties' filings over the past few months, the Court exercises jurisdiction over the Complaint.  Bonilla's claims are largely dependent on his allegations that the City guaranteed him a pension.  Based on the plain language of the written Settlement Agreement, which is attached to the Complaint and as an exhibit to the summary judgment motions, this allegation is not true.  The undisputed evidence shows that City agreed only that it would not oppose Bonilla's pension application, and there is no evidence of breach. The breach of contract claim, which is the second Count IX, is ripe for summary judgment and judgment is entered in favor of the City.  The motions for summary judgment are otherwise denied.  Instead, all claims are disposed of on the motions to dismiss.  The following counts are dismissed without prejudice,[24] either as premature and/or for failure to state a claim: Counts I though VII, the first Count IX, and Count XII.  The remaining counts are dismissed with prejudice because they fail as a matter of law and any amendment would be futile:[25] Count VIII, the second Count IX, and Counts X to XI.  Considering the ongoing pension proceedings and the

---

[24]     Bonilla's equitable relief claims under the Pennsylvania Constitution are dismissed without prejudice, but the claims for monetary relief under the Pennsylvania Constitution are dismissed with prejudice.

[25]     *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 111 (3d Cir. 2002) (holding that in the absence of undue delay, bad faith, dilatory motive, unfair prejudice, or futility of amendment, a court should grant a plaintiff leave to amend a deficient complaint after a defendant moves to dismiss it).

significant amount of time that has elapsed without effort by Bonilla to complete those proceedings,[26] the Court will not continue to stay the instant proceedings. However, Bonilla is granted leave to reopen this action by filing an amended complaint within thirty days of the completion of the pension proceedings and any related appellate review.[27]

A separate order will be issued.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge

Amended date: April 19, 2019

---

[26] Despite Bonilla's complaints of delay in the pension proceedings, he and counsel are primarily responsible for the delay. The record is replete with evidence that at least since the stay order was issued, Bonilla and Bonilla's counsel failed to timely pursue administrative remedies. *See* Footnote 11, *supra*. It appears that the pension proceedings stalled in the summer of 2015 when Bonilla's counsel failed to respond to and/or provide the Pension Board Defendants with the documents it needed before scheduling the next hearing. *See id.* Although there was some activity later that year and early in 2016, the pension proceedings halted completely in May 2016 due to Bonilla's counsel's failure to respond to the Pension Board's requests. *See id.*

[27] Because the Complaint is dismissed in its entirety, the Court does not reach the Pension Board Defendants' immunity argument. However, because Bonilla is being given leave to amend, at the appropriate time, Defendants are not prejudiced from reasserting this argument.